Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Both plaintiff and defendant are subject to the North Carolina Workers Compensation Act.
4. At all times relevant to this matter, plaintiff was the employee of defendant employer.
5. Plaintiffs average weekly wage for the purposes of this action is $955.66, yielding a compensation rate of $478.00.
6. Plaintiff returned to work on 12 November 1996 and was present for one day of "recurrent training.
7. Plaintiff was paid temporary total disability benefits ("TTD) beginning 27 July 1995 and received TTD payments for the period 27 July 1995 through 22 October 1996.
 ***********
Based upon all of the competent, credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff, age 41, has been employed by defendant as a flight attendant for 17 years. At all relevant times, plaintiff lived in Florida, but his work was based out of Charlotte.
2. On 8 March 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant when he was grabbed by the arm by a passenger and thrown against a row of seats, hitting his neck and back against the seats and wall and landing on the floor of the airplane. One of the flight attendants on that flight filed an incident report describing the incident and indicating that the passenger threw plaintiff to the floor. Plaintiff did not report an injury at that time.
3. Plaintiff began to feel shoulder pain and low back pain the next day, but took aspirin and continued to work, thinking that the pain would go away.
4. On 16 May 1995, plaintiff first sought medical attention for his injuries. He reported to his family physician in Florida, Dr. John Ondrejicka, with complaints of pain in his left shoulder going into his neck and low back pain. During this examination, plaintiff did not inform Dr. Ondrejicka of the 8 March 1995 incident and did not claim that his condition was work-related, but instead stated that it was his belief that he was suffering from bursitis. Relying on plaintiffs information, Dr. Ondrejicka initially diagnosed plaintiff with bursitis. Plaintiffs failure to attribute his pain to the work-related incident does not indicate an intent to mislead his physician regarding the causation of his pain.
5. On 15 June 1995, plaintiff presented at Dunn Chiropractic Wellness Center with complaints of neck pain, left shoulder pain and low back pain. Plaintiff completed a questionnaire at the chiropractors office in which he indicated that he had sustained no job-related injuries in his adult years. He indicated that he had been "pushed at age 36, but sustained no injuries as a result. Plaintiff was age 37 when he completed the questionnaire. He did, however, indicate that his left shoulder pain began suddenly three months prior to the visit. Plaintiffs claim that his shoulder pain had been present for approximately three months is consistent with the date of the work-related incident of 8 March 1995. Plaintiff treated with the chiropractor several times in June 1995 and then returned to Dr. Ondrejicka.
6. Plaintiff returned to Dr. Ondrejicka on 23 June 1995 with complaints of low back pain and pain and numbness in his left leg. Dr. Ondrejicka ordered MRIs. The MRI of the cervical spine indicated the likely presence of a small central disc herniation at the C4-5 level and a bulging disc at the C5-6 level. The MRI of the thoracic spine indicated only minimal chronic changes. Dr. Ondrejicka referred plaintiff to an orthopedic surgeon.
7. Plaintiff represented to Dr. Steven J. Lancaster, an orthopedic surgeon, on 12 July 1995. At that time, plaintiff completed a patient questionnaire indicating he was not injured at work and that he injured his back on 15 June 1995 when he "just bent over. Plaintiff testified that 15 June 1995 was the point when he could not stand up. Dr. Lancaster diagnosed a herniated cervical disc and left shoulder bursitis. He referred plaintiff to a neurosurgeon and recommended he not return to work until he saw one.
8. On 24 July 1995, plaintiff called Walter Callaway, an in-flight supervisor for defendant, to report that he needed to see a doctor for an injury resulting from the 8 March 1995 incident which he had previously reported. Mr. Callaway was unaware that plaintiff had already been receiving medical treatment and referred plaintiff to Dr. Daniel Bernstein, the "company doctor.
9. Dr. Bernstein first saw plaintiff on 27 July 1995 upon referral by defendant. Dr. Bernstein examined plaintiff, reviewed the notes of Dr. Ondrejicka, and noted a history of plaintiffs 8 March 1995 incident at work. Dr. Bernstein also noted that plaintiff had been seeing his own doctor who did an MRI of the cervical spine which showed a small central disc herniation but no significant mass effect at the C4-5 area and a possible bulging disc and degenerative changes at C5-6. Dr. Bernstein diagnosed shoulder strain and lumbosacral strain and ordered physical therapy. He advised that plaintiff stay out of work.
10. On 23 August 1995, plaintiff presented at Baptist Medical Center-Beaches in Florida with complaints of neck, right arm pain, low back and bilateral leg pain and occasional numbness since March 1995. An MRI of the lumbar spine was positive for disc herniation at L5-S1, disc degeneration at L2-3 and L5-S1 and envagination of disc material into the inferior endplate of L2. A CT scan of the cervical spine revealed endplate spurring encroaching on the nerve root canals at C4-5 and C5-6. An MRI performed on 8 September 1995 revealed "findings suspect for rotator cuff chronic tendinitis and associated rotator cuff tear.
11. On 30 August 1995, defendant completed a Form 60, Employers Admission of Employees Right to Compensation Pursuant to N.C. Gen. Stat. Section 97-18(b), in which it admitted plaintiffs right to compensation for an injury by accident on 8 March 1995. The form described the injury as left shoulder and lumbrosacral sprain and stated that temporary total compensation was being paid to plaintiff since the disability began 27 July 1995. Although defendant was paying for plaintiffs medical treatment by Dr. Bernstein and had access to those medical records which indicated that plaintiff had been seeing his family doctor, defendants claims administrator did not review the family doctors medical records prior to submitting the Form 60. The claims supervisor testified at the hearing before the Deputy Commissioner that if defendants claim administrator had been aware of the statements plaintiff made to his own doctors about his complaints and plaintiffs statements that he had not been injured at work, defendant would not have accepted liability for the claim. However, plaintiffs medical records were readily available for defendants review prior to admission of liability. Dr. Bernstein, defendants company doctor, reviewed plaintiffs prior medical records and spoke to one of plaintiffs doctors before defendant admitted the claim. Defendants failure to investigate does not constitute excusable neglect.
12. Upon referral by the employer and Dr. Bernstein, plaintiff began treating with Dr. Boatright at Miller Orthopaedic Clinic in Charlotte, North Carolina on 8 September 1995. Dr. Boatright examined plaintiff and reviewed the MRIs. His impression at that time was that plaintiff had an incomplete tear of his rotator cuff in his left shoulder and that the MRI findings in his cervical spine and low back were not very significant. He gave plaintiff an injection in the left shoulder and recommended plaintiff continue with the physical therapy recommended by Dr. Bernstein.
13. On 20 September 1995, plaintiff was seen by Dr. Chapman at Miller Orthopaedic Clinic for complaints of intermittent low back pain with any activity, starting in the buttock area and radiating down the leg into the distal tibial region. Dr. Chapman diagnosed back and left leg pain following lumbrosacral strain and a small herniation at L5-S1 on the left. He recommended that plaintiff begin a spine program.
14. Plaintiff returned to Miller Orthopaedic Clinic on 9 January 1996 with continued complaints of left shoulder pain. In light of plaintiffs physical exam and MRI, Dr. DAlessandro diagnosed impingement with partial cuff tear and recommended diagnostic arthroscopy with arthroscopic subacromial decompression. This procedure was performed on 23 January 1996.
15. On 7 March 1996, Dr. Hartman at the Miller Orthopaedic Clinic saw plaintiff. He noted that the arthroscopic surgery seemed to have relieved plaintiffs shoulder impingement symptoms, but the pain radiating to plaintiffs left shoulder persisted. Plaintiff described the pain as a sharp pain located in the base of his neck radiating into his shoulder and lateral aspect of his arm. Dr. Hartmans impression was that plaintiff had a left C5 radiculopathy, and he ordered CT scans of plaintiffs spine. On 6 May 1996, Dr. Hartman reviewed the CT scans which demonstrated some C5-6 spondylosis with C6 nerve root impingement. Dr. Hartman recommended a nerve root block. Plaintiff was also seen by Dr. DAlessandro that same day for a follow up on his shoulder problem. Plaintiff had no significant complaints of shoulder pain except complaints of occasional discomfort with repetitive overhead activity. Dr. DAlessandro released plaintiff from care for his shoulder problem and indicated that plaintiff had no permanent partial impairment in that regard.
16. Plaintiff reached maximum medical improvement with regard to his shoulder injury on 6 May 1996 with no permanent partial disability. However, plaintiff continued to treat with Dr. Hartman for his ongoing neck and lower back problems. On 17 June 1996, Dr. Hartman noted that plaintiffs lumbar x-rays showed a central to somewhat right-sided L5-S1 disk. Plaintiff was having some back pain but no radicular symptoms. Dr. Hartman discussed with plaintiff possible surgery of his cervical spine and ACDF at the C5-6 level. When plaintiff returned on 15 July 1996, he told Dr. Hartman that he did not want surgery. Dr. Hartman ordered a Functional Capacity Evaluation which was done by a physical therapist at Rehability Center on 10 September 1996.
17. The Functional Capacity Evaluation report indicated that plaintiff did not give maximum effort in the evaluation, but there was no indication of symptom magnification. The report indicated that plaintiff was limited to "light medium physical demand work, with a maximum safe carrying weight of 42 pounds and 22 to 25 pounds lifting overhead with each hand. The prognosis indicated was fair to good for return to work as a flight attendant. The evaluation concluded that plaintiffs abilities equaled the demands of his job as a flight attendant, but that his return to work may be limited by his complaints of neck and low back pain.
18. Plaintiff last saw Dr. Hartman on 16 October 1996. Dr. Hartman reviewed the Functional Capacity Evaluation and stated that the majority of the criteria fit plaintiffs job as a flight attendant and released plaintiff to return to that job. Dr. Hartman stated that plaintiff has a permanent partial impairment rating of 4% due to the loss of range of motion of his cervical spine and secondary pain in his neck and upper back. Plaintiffs neurologic exam was basically normal.
19. Plaintiff reached maximum medical improvement regarding his neck and back on 16 October 1996. The evidence is insufficient to establish what permanent partial disability plaintiff sustained according to N.C. Gen. Stat. 97-31; Dr. Hartman merely stated 4%, but did not clearly indicate to what part of the body he was referring.
20. Defendants claim administrator completed a Form 28 Return to Work Report on 25 October 1996, which inaccurately indicated that plaintiff returned to work 23 October 1996. Defendant ceased paying temporary total disability payments after 22 October 1996.
21. Plaintiff actually returned to work for defendant on 12 November 1996 for one day when he attended "recurrent training that was required by the FAA. Plaintiff completed the training but his low back, neck and shoulder pain increased that evening. Plaintiff did not return to work for defendant after that date.
22. On 19 November 1996, plaintiff returned to his family doctors office in Florida stating that he wanted to return to work but was occasionally having some numbness shooting down his left arm, especially with extension of his left hand and neck. The doctor gave him medication and told him to see a neurosurgeon if symptoms persisted. The medical notes do not indicate that plaintiff was taken out of work.
23. On 22 November 1996, plaintiff called Dr. Bernsteins office. Plaintiff reported that he was having back pain and was unable to stand up straight. Plaintiff said that he had back discomfort, left shoulder and neck discomfort following recurrent training. Dr. Bernstein scheduled plaintiff to come in for an examination on 4 December 1996. On that day, Dr. Bernstein examined plaintiff, noting a diagnosis of rotator cuff right shoulder, herniation at L5-S1 and cervical strain. However, Dr. Bernstein also noted a normal physical examination and found that plaintiff could return to work full duty despite his complaints.
24. On 7 January 1997, plaintiff was evaluated by Dr. Mark Spatola, a neurosurgeon in Florida upon the referral of plaintiffs family doctor. Plaintiff complained of persistent low back and neck pain relating to his 8 March 1995 injury by accident. Dr. Spatolas impression was chronic back and neck pain with no objective evidence of neurologic dysfunction. He recommended continued conservative management and referred plaintiff for Dr. Stephen Hickey for pain management. Dr. Spatola discharged plaintiff from his care.
25. Plaintiff first saw Dr. Stephen Hickey, a neurologist, on 4 March 1997. Plaintiff gave a history of the 8 March 1995 and reported continuing pain in his neck and into the left shoulder girdle, as well as in the low back with occasional radicular pattern down the left leg. Plaintiff described the low back pain as a constant mild discomfort which is worse with transitional positions. Dr. Hickey noted the following impressions: (1) history of multiple trauma; (2) history of cervical and lumbar disc disease, without evidence of radiculopathy; (3) chronic cervical strain pattern and mild lumbar strain pattern; and (4) status post left rotator-cuff repair. He recommended conservative management, including nonsteroidal anti-inflammatory drugs and self-management techniques. Dr. Hickey did not believe plaintiff was 100 % disabled, but stated that "based on my limited knowledge of the requirements of a flight attendant, I doubt he would be able to perform those activities. He indicated plaintiff could return to light and sedentary work. He recommended that plaintiff return in two months, which plaintiff did not do. He also suggested a functional capacity evaluation if one had not already been done.
26. Plaintiff underwent a medical evaluation by Dr. Chaim Rogozinski on 23 April 1997 at the request of defendant. At that time, plaintiffs primary complaint was of low back pain. His also complained of neck pain and left trapezial pain and intermittent left arm numbness. Dr. Rogozinski noted that plaintiffs functional capacity evaluation of 10 October 1996 stated that plaintiff gave a submaximal effort and placed plaintiff in a light medium physical demand category. Dr. Rogozinski stated that plaintiff could accept his present level of pain and return to light duty status with occasional lifting of 20 pounds and no constant lifting, or he could consider a surgical work-up for both his cervical and lumbar pain. Dr. Rogozinski further stated that plaintiff was disabled from being a flight attendant but was able to do other work with restrictions.
27. Plaintiff has not returned to work in any capacity since 12 November 1996. He has not applied for any jobs.
28. Defendant has failed to present sufficient evidence to set aside the Form 60 in that defendant had access to the records of the authorized treating physician which indicated that plaintiff had been treating with other doctors for his injuries; defendant could have more thoroughly investigated the matter prior to signing the Form 60. Thus, as a result of the compensable 8 March 1995 injury by accident, and as established by the medical records, plaintiff was unable to earn wages with defendant or in any employment from 27 July 1995 until 12 November 1996.
29. However, after being released to return to his regular job by Dr. Hartman and after having completed one day of work, plaintiff did not return to work voluntarily. Dr. Bernstein was of the opinion that plaintiff could return to his flight attendant job after examining plaintiff on 4 December 1996. Plaintiff did not otherwise present sufficient evidence to establish that he was unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The opinions of Dr. Hartman and Dr. Bernstein, both authorized treating physicians, established that plaintiff was able to return to work as a flight attendant as of 12 November 1996.
30. However, through the medical records of Dr. Hickey and Dr. Rogozinski, plaintiff established that, as of March 1997, as a result of his injuries he was unable to return to work as a flight attendant, but that he was able to do other work with restrictions. He failed to present evidence sufficient to establish that he had made a reasonable efforts to obtain employment and was unable to do so or that it would be futile to look, or that he obtained employment at less than his pre-injury wages. Thus, he failed to establish that he was unable to earn the same wages he had earned before the injury.
31. Plaintiffs initial failure to causally relate his medical condition to his 8 March 1995 work-related fall as a result of an assault by a passenger does not constitute an intentional misrepresentation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Defendant has failed to present sufficient evidence to set aside the Form 60 and is thus bound by its acceptance of liability for plaintiffs claim. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant on 8 March 1995. N.C. Gen. Stat. 97-2(6).
2. As a result of the injury by accident, plaintiff was temporarily and totally disabled from 27 July 1995 until 12 November 1996 and is entitled to compensation for that period of time. N.C. Gen. Stat. 97-29.
3. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident, including all treatment for his shoulder, neck and low back injury. N.C. Gen. Stat.97-2(19), 25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay compensation at the rate of $478.00 per week for the temporary total disability he sustained as a result of the injury by accident, subject to a credit for amounts previously paid. This compensation has accrued and shall be paid in a lump sum, subject to attorneys fees approved below.
2. Defendant shall pay for all authorized and necessary medical expenses incurred as a result of this injury by accident when the bills for the same have been submitted through defendant and approved by the Industrial Commission. In that plaintiff now resides in Florida, he may move for a change in his authorized treating physician to a local doctor if defendant fails to provide one as necessary.
3. Because Dr. Hartmans 4 % permanent partial disability rating was not sufficient according to N.C. Gen. Stat. 97-31, the parties may ask him for a clarification or stipulate to a rating. This issue of the amount of plaintiffs permanent partial disability regarding his neck and back is reserved for presentation of evidence at another hearing if the parties fail to agree.
4. Plaintiffs counsel is awarded a reasonable attorneys fee of 25% of the total amount awarded to plaintiff in Paragraph 1 above.
5. Defendant shall pay the costs.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER